# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH LARSON,<br><br>　　　　　　　Defendant. | Case No.  12-cr-00886-BLF-1<br><br>**CORRECTED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH**<br><br>[Re:  ECF 98] |

On September 29, 2014, this Court granted Defendant's application for five subpoenas pursuant to Federal Rule of Criminal Procedure 17(c). *See* ECF 94. Before the Court is the Government's Motion to Quash the five subpoenas, issued to the following entities: (1) The Department of Homeland Security ("DHS"), specifically requesting information from Immigration and Customs Enforcement ("ICE"), the National Computer Forensic Institute ("NCFI"), and the Federal Law Enforcement Training Center ("FLETC"); (2) the Federal Bureau of Investigation ("FBI"); (3) the National Advocacy Center ("NAC"); (4) the Office of Juvenile Justice and Delinquency Prevention ("OJJDP") and the Internet Crimes Against Children Task Force ("ICAC"); and (5) the Child Exploitation and Obscenity Section ("CEOS") of the Department of Justice.

The Court held oral argument on the Motion to Quash on October 21, 2014. The Court, having reviewed the arguments of the parties and the relevant case law, hereby GRANTS IN PART AND DENIES IN PART the Government's Motion. For the reasons articulated below, the Motion to Quash is DENIED as to the first subpoena, issued to the Department of Homeland Security, which is narrowed herein by the Court to include only ICE, FLETC, and NCFI. The Court shall conduct an *in camera* review of the documents deemed responsive to this first

United States District Court<br>Northern District of California

1   subpoena prior to their disclosure to the defense. The Motion is GRANTED as to the second

2   through fifth subpoenas, issued to other governmental entities.

3   **I.      BACKGROUND**

4            Defendant Keith Larson is charged with two felony counts: attempted aggravated sexual

5   abuse of a minor, 18 U.S.C. § 2241(c), and travel with intent to engage in sexual conduct with a

6   minor, 18 U.S.C. §2423(b). *See* Indictment, ECF 8. These charges arose from an investigation by

7   undercover DHS/HSI Special Agent Scott Beagle, who from September to December 2012,

8   purporting to be the father of an 11-year-old developmentally disabled daughter, engaged in a

9   series of sexually explicit conversations with Defendant via an Internet Relay Chat (IRC) room

10  and Yahoo Instant Messenger (YIM). This investigation culminated in Defendant's arrest at the

11  San Jose International Airport on December 9, 2012.

12           The Government, on July 31, 2014, filed a witness list for trial that included Agent Beagle

13  as well as Special Agent Kevin Laws, a DHS Instructor in undercover operations. ECF 55 at 2, 3.

14  On August 19, 2014, defense counsel sent the Government a request to produce documents

15  regarding six categories of information, including "[t]raining manuals and instruction materials

16  governing DHS undercover operations of the same nature as this case." ECF 93-1, Exh. A at 4.

17  Following the Government's objection to these requests, and further communication between the

18  parties, Defendant filed with this Court an Application for Rule 17(c) Subpoenas, which the Court

19  granted. ECF 94. Defendant served the five subpoenas on October 1, 2014. Each subpoena was

20  identical in its document production demands, requesting:

21               All materials, including written, electronic and video, used in 2012
                 and those presently used, to train governmental agents investigating
22               child exploitation pursuant to undercover operations that relate to
                 Internet communications, including the use of screen names,
23               initiation and content of dialogue, best practices, initiatives and
                 'do's and don'ts.'
24

25  *See* Mot. to Quash, ECF 98 at 1.

26           The Government moves to quash the subpoenas, arguing that the subpoenas fail to satisfy

27  the requirements of Rule 17(c) and amount to a fishing expedition. The Government further argues

28  that, to the extent it has documents responsive to the subpoenas, those documents are protected by

United States District Court
Northern District of California

1    the law enforcement privilege ("LEP").[1]

2    **II.    LEGAL STANDARD**

3            Rule 17(c) provides that "[a] subpoena may order the witness to produce any books,

4    papers, documents, data, or other objects the subpoena designates." Fed. R. Cr. P. 17(c)(1). A

5    party may move to "quash or modify the subpoena if compliance would be unreasonable or

6    oppressive," *United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1113 n.51 (9th

7    Cir. 2008), "but not otherwise." *United States v. Nixon*, 418 U.S. 683, 698 (1974).

8            A Rule 17(c) subpoena is "not intended to provide a means of discovery for criminal

9    cases." *U.S. v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989). Rule 17 requires a showing of

10   "relevancy, admissibility, and specificity to support the issuance of a subpoena." *See United States*

11   *v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984); *see also Nixon*, 418 U.S. 683, 700-01. This requires

12   the moving party to show "that the documents [sought] are evidentiary and relevant, . . . and that

13   the application is made in good faith and is not intended as a general fishing expedition," *Nixon*,

14   418 U.S. 683, 699; *see also United States v. Mackey*, 647 F.2d 898, 901 (9th Cir. 1981) (holding

15   that Rule 17(c) was not intended to "allow a blind fishing expedition seeking unknown evidence"),

16   and further demands that the subpoena not be overbroad, *see, e.g.*, *United States v. Ochoa-*

17   *Sanchez*, 676 F.2d 1283, 1288 (9th Cir. 1982). A Rule 17(c) subpoena that seeks only to produce

18   "impeaching documents before a witness has testified" is improper. *United States v. Fields*, 663

19   F.2d 880, 881 (9th Cir. 1981) (*citing Nixon*).

20            It is up to the discretion of the trial court to determine whether a Rule 17(c) subpoena

21   application has met the *Nixon* requirements, *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir.

22   1981), and the trial court's determination "will not be disturbed unless clearly arbitrary or without

23   support in the record," *Reed*, 726 F.3d 570, 577 (*citing Nixon*, 418 U.S. 683, 702).

24   **III.   DISCUSSION**

25            The Court views the subpoenas at issue as properly divided into two categories: (1) the

26

27   [1] The Government has noted that, pursuant to the DHS subpoena, it has conducted inquiries as to
     both ICE and FLETC, and has determined that ICE has two documents potentially responsive to
     Defendant's subpoena, while FLETC has none. Mot. to Quash at 4 n.4. The Government has not
28   yet conducted an inquiry as to NCFI to determine if it has responsive documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   subpoena issued to DHS and its component organizations, ICE, FLETC, and NCFI; and (2) the

2   other four subpoenas issued to various components of the DOJ. This division is due to the nature

3   of Special Agents Laws' and Beagle's different work and purported expertise: Beagle was

4   employed in his undercover investigative role by DHS, and Laws is being offered as an expert

5   witness in his role as a "DHS Instructor." ECF 55 at 3. Both men's ties to DHS are substantially

6   stronger than their ties, if any, to the four DOJ components that are the subject of the other four

7   subpoenas.

8        For the reasons below, the Court therefore DENIES the Motion to Quash with regard to the

9   DHS subpoena, but GRANTS the Motion with regard to the other four non-DHS subpoenas.

10       **A.    The DHS Subpoena**

11              *1.    Rule 17(c)*

12       In order to obtain discovery through a Rule 17(c) subpoena, the requested documents must

13   be material to the case. *See, e.g.*, *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).  The

14   scope of the subpoena issued to DHS is not clear insofar as it appears to cover both DHS in its

15   entirety and three of its component agencies: ICE, FLETC, and NCFI. At the hearing on the

16   Motion to Quash, the Government explained to the Court that DHS is an enormous federal agency,

17   comprising multiple departments and divisions whose scope can cover national and international

18   investigations of child exploitation, and a myriad of other operations unrelated to the issues of this

19   case. The Court notes that DHS's website shows that the Agency employs more than 240,000

20   employees and its component divisions include ICE, the United States Coast Guard, FEMA, the

21   TSA, and the Secret Service, to name a few. *See* www.dhs.gov/about-dhs (accessed Oct. 28,

22   2014).

23       Defendant did not concede at oral argument that he wished to limit the reach of the DHS

24   subpoena to only the three listed divisions, and defense counsel acknowledged that they were

25   unfamiliar with each of the many divisions within DHS, such that counsel could not state with

26   certainty which other components of DHS might have documents responsive to the subpoena.

27       For purposes of this Order, the Court will limit the scope of the DHS subpoena to the three

28   identified divisions – ICE, FLETC, and NCFI. As agreed at the October 21 hearing, the

4

United States District Court
Northern District of California

1    Government will submit a supplemental brief identifying each additional component of DHS with

2    authority over child exploitation undercover activities and will be given the opportunity to explain

3    why any of those components may fall outside the reach of the Rule 17(c) subpoena.

4           The remainder of this Order is limited to a determination of whether the Motion to Quash

5    should be granted under this limited scope of the subpoena. Based on the limited scope of the

6    DHS subpoena, the Court finds that the defense has made the necessary showing under *Nixon*. The

7    subpoena is specific in that it seeks only information regarding training materials for undercover

8    child exploitation investigations over the Internet over time periods pertinent to this case. The

9    materials requested would be admissible and relevant for purposes of Defendant's outrageous

10   government conduct defense, in which Defendant argues that the activities of Agent Beagle were

11   so far afield from those sanctioned by DHS training that the case against Mr. Larson should be

12   dismissed. Further, the documents would be used at trial to show that Agent Beagle's actions were

13   outside the scope of approved investigatory procedures. Additionally, the subpoena is narrowly

14   tailored and sufficiently related to the training received by Agent Beagle regarding investigative

15   techniques and procedures.

16                    2.    *The Law Enforcement Privilege*

17          The Government argues that even if the Court finds the materials sought are admissible,

18   relevant, and specific under *Nixon*, the materials should not be turned over to the Defendant

19   because they are subject to the LEP.[2] In order to assert the LEP, a party must first identify the

20   documents at issue. *See In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1978) ("Before the

21   government may assert the privilege, the information for which the privilege is claimed must be

22   specified."). Here, the Government has properly asserted the LEP by identifying two documents

23

24   [2] The Government also argues that 5 U.S.C. § 552 shields it from having to comply with the
     subpoenas. *See* Mot. to Quash at 12-14. This argument is unpersuasive. Though Section
25   552(b)(7)(E) provides a statutory privilege from disclosing certain "records or information
     compiled for law enforcement purposes," the exemption applies to documents sought through
26   Freedom of Information Act ("FOIA") requests, and not documents sought through Rule 17(c)
     subpoenas. *See U.S. Dept. of Justice v. Julian*, 486 U.S. 1, 8 (1988) ("A federal agency must
27   disclose agency records [pursuant to FOIA] unless they may be withheld pursuant to one of the
     nine enumerated exemptions listed in § 552(b). . . . FOIA exemptions are to be narrowly
28   construed.").

from ICE: (1) a 47-slide PowerPoint presentation entitled "Basic Undercover Operations Online & Backstopping of Under Cover Agents Online," and (2) an 86-slide PowerPoint presentation entitled "On-Line Chat Investigations," both used to train HSI Special Agents. *See* Declaration of John G. Connolly, ECF 98-1 ¶¶ 3a, 3b, 4 ("I am formally asserting the law enforcement privilege over [these] documents in full.").[3]

The LEP protects sensitive law enforcement information, especially information about confidential informants and certain highly secretive investigative techniques, as well as information about current, pending investigations. *See, e.g. U.S. v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986); *see also Ibrahim v. Dep't of Homeland Sec.*, 2013 WL 1703367 (N.D. Cal. Apr. 19, 2013). The Ninth Circuit has not yet outlined a test for evaluating assertions of the LEP, *see Ibrahim*, 2013 WL 1703367, at *4, but courts in this district have utilized the D.C. Circuit's *In re Sealed Case* test when balancing the interests of disclosure against the need to keep information about particular techniques secret. The ten factors a court must consider under this test are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; [and] (10) the importance of the information sought to the plaintiff's case.

*Id.* at *4 (*citing In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1978)); *see also S.E.C. v. Gowrish*, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) (utilizing the *In re Sealed Case* test in the civil context).

---

[3] The Government further indicated that there were no responsive documents from FLETC and that it had not been able to ascertain whether NCFI had any responsive documents at the time of the hearing. The Court has ordered that review of the NCFI documents proceed immediately.

1     Here, it seems that many of the *In re Sealed Case* factors simply do not apply. For

2   example, the investigation into Mr. Larson has been completed, the documents do not appear to

3   include information about Mr. Larson, and there are no confidential informants whose identities

4   must be protected. The type of document at issue here – training materials used by a person who is

5   listed on the Government's witness list as someone who will testify about his role in conducting

6   such trainings – does not seem to fall within the ambit of those documents or information the LEP

7   is designed to protect. In the past, courts have used the LEP to block access to information

8   regarding informants' names, *United States v. Roviaro*, 353 U.S. 53 (1957), the location and

9   nature of secret surveillance equipment, *United States v. Van Horn*, 789 F.2d 1492 (11th Cir.

10   1986), and confidential witness reports, *United States v. Longueuil*, 567 Fed. App'x 13 (2d Cir.

11   2014). It seems a stretch to also apply the LEP in this context to training materials, the content and

12   application of which are material to Defendant's defense, particularly when the Government has

13   stated an intention to call the trainer as a witness to testify about trainings he has instructed and

14   where Defendant's outrageous government conduct defense requires an analysis of whether Agent

15   Beagle's conduct comported with the training he received and the policies of the government in

16   conducting such investigations. *See U.S. v. Williams*, 2010 WL 4595551, at *2-3 (N.D. Cal. Nov.

17   4, 2010) (permitting the redacted disclosure of government policies, following the court's *in*

18   *camera* review, that would support Defendant's defense and assist the jury in making witness

19   credibility determinations).

20     Although the Court is persuaded that the LEP does not shield these documents from

21   disclosure in their entirety, and that a protective order would adequately address the confidentiality

22   concerns raised by the Government, a final determination regarding the scope of disclosure cannot

23   be made until the Court has had the opportunity to review the documents *in camera.* As the

24   Government has pointed out, portions of those documents may relate to ongoing investigations,

25   contain witness names, or pertain to other confidential or proprietary information. Thus, the Court

26   will require the Government to produce the documents under seal no later than November 14,

27   2014, and to submit a supplemental brief describing any requested redactions and the reasons

28   therefore. *See* ECF 111 at 1-2. The Court will require that the supplemental brief be prepared in a

United States District Court
Northern District of California

7

1   manner so that defense counsel can be advised of the nature of the redacted portions without

2   revealing the specific content of the documents.

3                    *3.*          Touhy *Regulations*

4          The Government also contends that it does not need to comply with the subpoenas because

5   the subpoenas did not comply with certain procedures established by the DHS and its components.

6   For this proposition, it cites *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See* Mot.

7   to Quash at 2. The Government contends that DHS has promulgated certain regulations for parties

8   to demand testimonial or documentary evidence, *see* 6 C.F.R. § 5.45(a), and that Defendant has

9   not complied with such regulations in seeking this evidence. Defendant, in response, argues that

10  *Touhy* regulations do not apply with the same force in criminal proceedings as they do in civil

11  cases. Opp. to Mot. to Quash at 5-7.

12         The Court agrees with the Defendant. This Circuit made clear in *United States v.*

13  *Bahamonde*, 445 F.3d 1225, 1228-29 (9th Cir. 2006), that Section 5.45(a) can violate due process

14  in certain circumstances by "failing to provide reciprocal discovery." *See also Wardius v. Oregon*,

15  412 U.S. 470, 472 (1973) ("It is fundamentally unfair to require a defendant to divulge the details

16  of his own case while at the same time subjecting him to the hazard of surprise concerning

17  refutation of the very pieces of evidence which he disclosed to the State."); *Johnson v. Reno*, 92 F.

18  Supp. 2d 993, 994 (N.D. Cal. 2000). In this case, the DHS cannot refuse to provide information to

19  Defendant in the face of a valid 17(c) subpoena, which complies with the requirements of *Nixon*,

20  simply because it has promulgated regulations with which Defendant has not complied. *See*

21  *Bahamonde*, 445 F.3d 1225, 1229.

22         **B.**         **The Other Four Subpoenas**

23         The Court finds that the subpoenas issued to non-DHS entities do not meet the requisite

24  showing under *Nixon* because the information sought is neither admissible nor relevant. Defendant

25  looks to be seeking information regarding investigative techniques used by organizations to which

26  Agents Beagle and Laws have little to no connection, primarily in an effort to obtain impeachment

27  evidence against the agents. Use of a Rule 17(c) subpoena for purposes of obtaining impeachment

28  evidence prior to a witness' testimony is improper. *See, e.g.*, *U.S. v. Fields*, 663 F.2d 880, 881 (9th

United States District Court
Northern District of California

8

Cir. 1981). Defendant provides the Court with no satisfactory connection between the two agents and the non-DHS entities that would make information about those organizations' investigative methods relevant or admissible, other than to suggest that Agent Laws received training himself, or trained agents in other agencies in years not covered by the subpoenas in question. *See* Declaration of Amber Donner, ECF 93 ¶¶ 11, 12, 18, 20. Defendant seems to be going on a fishing expedition for evidence of the practices of other government entities who also engage in these types of investigations. Rule 17(c) does not permit the Defendant to cast such a wide net in the hope that he manages to catch something. *Id.* As such, the Court GRANTS the Government's Motion to Quash with regard to subpoenas two, three, four, and five.

## IV.    ORDER

Pursuant to its findings above, the Court hereby ORDERS that the Government (1) provide the Court copies of the two responsive documents from ICE for *in camera* review, so that the Court can determine whether the LEP applies to the documents, and what information, if any, should be redacted from the documents if they are provided to Defendant;  (2) conduct an inquiry with NCFI to determine if any documents are responsive to the subpoena, and submit any responsive documents to the Court in the same manner as the two ICE documents; and (3) identify any other components of DHS that conduct undercover Internet child exploitation investigations as described in the subpoena – and submit to the Court a supplemental brief that lists these entities and any argument as to why the subpoena should not cover said DHS component(s).[4]

IT IS SO ORDERED.

Dated: November 4, 2014

BETH LABSON FREEMAN
United States District Judge

---

[4] This brief shall be due on November 14, 2014, pursuant to the Court's October 21, 2014 Scheduling Order. *See* ECF 111. Defendant will be given the opportunity to respond to this brief, and his response shall be due on November 21, 2014. Neither brief may exceed five (5) pages without the parties seeking leave of Court.